TIMOTHY S. COLLINS *vs.* CASUALTY COMPANY OF AMERICA.

Essex.    November 4, 1915. — May 23, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Insurance,* Accident. *Proximate Cause. Practice, Civil,* Province of jury, Charge of judge. *Evidence,* Presumptions and burden of proof.

In an action on a policy of accident insurance where by the terms of the policy the insurance was against "loss of life . . . resulting from bodily injuries . . . effected directly and independently of all other causes through accidental means," it appeared that the insured had a predisposition to rupture, that he accidentally fell and ruptured himself, that an operation, if not necessary, was the only proper way in which the injury should be treated, that thirteen days after the injury an operation was performed, that there was a satisfactory healing of the wound, but that thirteen days after the operation the insured died owing to some "obscure physiological poisoning due to certain unknown changes in the bodily functions brought about by etherization." It was *held,* (1) that the jury were warranted in finding that the predisposition to rupture was not a cause of the accident; and (2) that, the insured having come to his death through the etherization which was an incident of the operation that was the proper treatment of his accidental injury and which could be found to have been a necessary or proper result of such injury, a finding was warranted that his death resulted from bodily injuries "effected directly and independently of all other causes through accidental means."

St. 1907, c. 576, § 21, provides that "No . . . warranty made in the negotiation of a . . . policy of insurance by the assured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such . . . warranty is made with actual intent to deceive or unless the matter . . . made a warranty increased the risk of loss." A warranty, contained in a policy issued by an accident insurance company insuring against loss of life, stated that the insured was in sound condition physically. He had had from his birth a predisposition to rupture, and after taking out the policy accidentally fell and ruptured himself, in consequence of which he died. In an action on the policy there was no evidence that the warranty of sound condition was made with intent to deceive. *Held,* that, assuming that a predisposition to rupture was unsoundness of condition, it was a question of fact for the jury to determine whether such unsoundness increased the risk of loss.

In the same case there was evidence, introduced by the defendant and not objected to by the plaintiff, not only that a predisposition to rupture increased the risk of loss but also that accident insurance companies generally did not take such a risk. *Held,* that the jury were not bound to believe the testimony to this effect and might make a finding to the contrary.

In the same case the judge in the course of his charge to the jury said, "All parties to a contract, whatsoever contract it may be, who sign it or accept it, are presumed

to know the terms thereof; but this presumption is not conclusive." It was plain from the context that this was said by the judge in connection with the question whether the insured had an actual intent to deceive the defendant in the statements made by him in the warranties. *Held,* that in the connection in which it was used and must have been understood the statement of the judge was correct.

LORING, J. This is an action by the beneficiary named in a policy of accident insurance to recover for the death of the insured. The insured on December 15, 1910, went from his office with a coal hod to get some coal from a coal bin near by. While returning with the coal he slipped, fell and ruptured himself. It was in evidence and must be taken to have been conceded, that the insured from birth had a predisposition to rupture because the inguinal canal was not closed as it ought to have been, but that by virtue of his muscles the opening had been kept shut until the accident here in question. There was also evidence that the rupture was an irreducible one and that for a man of the insured's years and condition a suspensory truss was not the treatment to be adopted, but that an operation, if not necessary, was the only proper way in which the injury should be treated, and that the insured was so advised. In consequence of that advice he was operated upon on December 28, 1910, and died on January 10, 1911. It appeared that so far as the immediate operation was concerned it was successful, that is to say, there was a satisfactory healing of the wound. But some three or four days after the operation the insured was taken with vomiting, was unable to hold his food for any protracted period and died owing to certain "obscure physiological poisoning brought about by some unknown changes in the bodily functions due to etherization."

By the terms of the policy the defendant insured the assured "Against loss of life, limb, sight and time resulting from bodily injuries . . . effected directly and independently of all other causes through accidental means." The policy further provided under the heading "Indemnity for Loss of Life, Limb or Sight" that: "If any one of the losses named in this section shall result directly and independently of all other causes from such injuries within ninety days from date of accident, but not necessarily causing immediate and continuous disability, the Company will pay the sum set opposite such loss." · The jury found a verdict which represented the sum payable for death happening in ac-

cordance with the terms of the policy and the case is here on exceptions taken by the defendant.

1. The first exception argued by the defendant is that taken to the refusal of the presiding judge to make the first and twenty-sixth rulings asked for by it. *

The first contention made by the defendant in support of these exceptions is that the insured's predisposition to rupture was a cause of the injury to the insured and therefore that there was no evidence on which the jury could find that the death of the insured resulted from a bodily injury effected directly and independently of all other causes through accidental means. But we are of opinion that the jury were warranted in finding that the predisposition to rupture was not a cause of the accident. It is not unlike the streptococcus germs in the nose in *Smith* v. *Travelers Ins. Co.* 219 Mass. 147, and the disease of diabetes in *Cheswell* v. *Fraternal Accident Association*, 199 Mass. 267. See also in this connection *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32.

The more difficult question arises however under the defendant's contention that there was no evidence that the death of the insured resulted "directly and independently of all other causes" from the accidental fall which the assured suffered on December 15, 1910. So far as we know the true construction of that provision of the policy is a question of novel impression. The provision of the policy in question in *Cheswell* v. *Fraternal Accident Association, ubi supra,* was that the company would agree to pay to the beneficiary "the sum of twelve hundred fifty dollars if the death of the certificate holder shall result from such injuries alone" within ninety days from the date of said accident. And there was a similar provision in *Freeman* v. *Mercantile Mutual Accident Association*, 156 Mass. 351. But the decisions in those cases do not go far as a help in the decision of the case at bar. Neither the plaintiff nor the defendant has brought to our attention any case involving a consideration of the proper construction of such a clause in a policy of accident insurance and no case of that kind has come to our attention.

---

* The presiding judge was *Quinn,* J.   The rulings referred to were as follows: "First: On all the evidence the plaintiff is not entitled to recover."

"Twenty-sixth: If the plaintiff is unable to establish the precise cause of the insured's death, he cannot recover."

The defendant has not laid stress upon the provision of the policy that the death must result "directly" from the injury in question. This may be because of the provision that the injury need not cause "immediate" disability.   Under these circumstances we do not stop to consider that provision and proceed to the consideration of the provision that death must result from the injury "independently of all other causes."

We are of opinion that, in a case where a surgical operation becomes necessary in order to deal properly with the effects of an injury within the policy of accident insurance and the insured dies as a result of the opration, death results "independently of all other causes from such injuries."   Although he dies from some "obscure physiological poisoning due to certain unknown changes in the bodily functions brought about by etherization," it is plain, and in fact it was testified to by one of the doctors, that "the operation consisted of the etherization, just as essentially as it did of my [the] operation on him, cutting with the knife."   If the jury found in the case at bar (as indeed they must have found) that the occasion of the death was an "obscure physiological poisoning due to certain unknown changes in the bodily functions brought about by etherization," they were bound, or at least they were warranted in finding that that was a mere incident of the operation, which operation again was the only proper way of dealing with the rupture which was caused by "accidental means" within the terms of the policy.   If they did so find the insured came to his death from an incident of what was a proper treatment of the injury (which injury was within the policy).   If this effect of etherization was an incident of the operation and that was found to be a necessary or proper result of the injury, it was not another outside cause but an incident of a cause within the policy and in that case death resulted "directly and independently of all other causes from such [the] injuries."

It follows that there was evidence for the jury and the first ruling was properly refused.   It follows also that if the jury drew the inferences we have just stated the plaintiff had established the cause of the death of the insured and the twenty-sixth ruling ought not to have been given.

2.   From what has been said it is evident that the exception

taken to the refusal to give the twelfth ruling asked for was rightly refused.*

As we have held already, the question for the jury was whether the insured died from the operation including one of its incidents. If he did, it was as matter of law not a cause of the death and therefore the twelfth ruling asked for was wrong.

3.  The twenty-first ruling asked for was rightly refused.†

By St. 1907, c. 576, § 21, it is provided that "No . . . warranty made in the negotiation of a . . . policy of insurance by the assured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such . . . warranty is made with actual intent to deceive or unless the matter . . . made a warranty increased the risk of loss." It is settled that the words "in the negotiation of a . . . policy of insurance" included the issuance of the policy itself. *Everson* v. *General Accident, Fire & Life Assurance Corp. Ltd.* 202 Mass. 169.

There was no evidence that this warranty was made with the intent to deceive. The only question was whether it was a warranty which increased the risk of loss. The burden of proving that this warranty increased the risk of loss was upon the defendant. As a general rule it is for the jury to decide whether as matter of fact an affirmative defence has been made out in the evidence. *Leary* v. *William G. Webber Co.* 210 Mass. 68.

Without stopping to consider the question whether on the evidence there was a question of fact for the jury with respect to the fact that the insured was not in sound condition physically, (in view of the fact that thirty per cent of all men have a predisposition to rupture,) it was for the jury to determine whether that fact increased the risk of loss.

---

* The ruling referred to was as follows: "Twelfth: If the jury believe that the wearing of a truss would have adequately controlled the hernia, and if they further believe that Patrick H. Collins voluntarily submitted himself to a surgical operation, and if they believe further that the cause of his death was the surgical operation, it cannot be said that his death resulted directly and independently of all other causes from the injuries received on December 15, 1910."

† The ruling referred to was as follows: "Twenty-first: Statement Q in the schedule of warranties contained in the policy issued to Patrick H. Collins, that he was in sound condition physically, was untrue and the matter there made a warranty increased the risk of loss."

There was evidence directly to the fact that not only that a predisposition to rupture increased the risk of loss, but that accident insurance companies generally did not take a risk in such a case. But the jury were not bound to believe that testimony. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314. And a predisposition to rupture does not come within the cases of *Brown* v. *Greenfield Life Association,* 172 Mass. 498; *Rainger* v. *Boston Mutual Life Association,* 167 Mass. 109; *Dolan* v. *Mutual Reserve Fund Life Association,* 173 Mass. 197.

4. In his charge to the jury the presiding judge said: "All parties to a contract, whatsoever contract it may be, who sign it or accept it, are presumed to know the terms thereof; but this presumption is not conclusive." It is plain from the context, that this was said in connection with the question whether the insured had an actual intent to deceive the defendant in respect to the statements in the warranties made by the insured including that marked Q. In that connection the instruction was correct. The defendant has argued that the statement was not in terms so limited. But we are of opinion that that contention is not correct.

*Exceptions overruled.*

The case was submitted on briefs.

*F. Peabody, E. K. Arnold & S. H. Batchelder,* for the defendant.
*J. P. Sweeney & L. S. Cox,* for the plaintiff.