144 So. 451

# FIRST NAT. BANK OF BIRMINGHAM v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

### 6 Div. 44.

Supreme Court of Alabama.
Nov. 10, 1932.

E. L. All, W. A. Rose, and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Howze & Brown, of Birmingham, for appellee.

BOULDIN, J.

The action is upon a policy of accident insurance; more specifically upon the "Special Provisions" of a life policy providing "Double Indemnity" in case of death "in consequence of bodily injury effected solely through external, violent and accidental means * * * and as the direct result thereof independent of all other causes."

Another clause stipulates that such agreement shall not cover death from engaging in certain hazardous occupations, etc., "or death resulting directly or indirectly from bodily or mental infirmity, ptomaines, or bacterial infections other than infection occurring simultaneously with and in consequence of an accidental cut or wound."

The issues on which the cause was tried were presented by special pleas alleging the death of the insured resulted directly or indirectly from "bodily infirmity" or from "bacterial infection."

The trial court gave the affirmative charge, with hypothesis, for defendant. This ruling is presented for review.

It was agreed between the parties as follows: "In the month of May, 1929, Mr. Bissell [the insured] was in Chicago engaged in the motor transportation business, and he was in the Congress Hotel. He left the cigar counter and had gone to the door and had some money in his hand. There was a crowd in the hotel and just about the time he got near the door he was hit in the back of the head at the base of the skull with a blackjack by some man that disappeared in the crowd and who was unknown to Mr. Bissell and the man escaped. Mr. Bissell sustained a fracture of the skull and was taken to a hospital. That was in May, 1929. He was in the hospital about two weeks and he then returned to Birmingham. That was approximately nine months before he died."

The plaintiff's evidence tends to show: After his return to Birmingham, Mr. Bissell received no further medical treatment; after about four weeks he had apparently recovered from the injury, engaged actively in his business, was apparently in good health, and looked well.

On February 14, 1930, he had an attack of earache, found to have an abscess in the ear. This was lanced, and the patient given opiates to ease his pain; but pain with nausea persisted for some hours.

Mrs. Bissell testifies: "A little before midnight I went down to fix the ice bags and when I came back to the room Mr. Bissell was up; he was getting out of bed, standing up, and I told him to wait a minute, I would help him, and he said he did not need any, but I went over and did reach his side and put my shoulder against him. He weighed over 200 pounds and I put my shoulder up to help him. I could not hold him when he fell and his head hit the baseboard of the room and he never knew anything else."

He died the following afternoon.

The further evidence consisted of the testimony of physicians of unquestioned competence, all introduced by plaintiff. Briefly their evidence is to this effect:

There was a wound on the temple and some bruises on the body attributable to the fall in the room.

An autopsy revealed the results of an old injury to the temporal lobes of the brain. A

photograph of same is in the record. This injury was attributable to the former blow on the back of the head, known as contrecoup bruises, or injuries to the brain on the side opposite the blow.

The injury had produced small hemorrhages of the brain, which had become abscessed or walled in by nature's protective processes, and prior to the fall in the room had become dormant, with fair prospect of final absorption, nothing intervening to prevent.

But there were adhesions to the skull, and an abscessed condition. With one accord the physicians conclude the blow on the temple by the fall in the room ruptured the abscess, leading to meningitis, the inflammation of the meninges, or coverings of the brain, as the immediate cause of death. They further agree that the fall in his room would not have caused death but for these lesions of the brain.

The abscess of the ear was a local, temporary trouble, had no connection with the brain lesions. The ear trouble may have disturbed the sense of balance, and so led to the fall.

The abscess of the brain and the adhesions mentioned made a serious condition, in that rather a wide range of probabilities might bring on meningitis, and especially was a blow on the head, not serious within itself, likely to bring fatal results. One physician says, if such condition had been known, he would have advised entire quiet as a precaution against dangers from the ordinary activities of life.

We think the foregoing fairly presents the pertinent evidence. We discern no conflict among the witnesses.

On this state of facts, did death result "directly or indirectly from bodily infirmity" within the meaning of this policy?

We may note that this policy only covers deaths resulting within ninety days following the accident, and hence the blow nine months before cannot be considered as an accident covered thereby.

The "bodily infirmity" at the time of the fall, regardless of its origin, is the matter of inquiry.

In dealing with accident policies whose coverage is defined by the general terms, such as death resulting directly and solely from the accidental injury, exclusive or independent of all other causes, this court has approved and adopted the rule announced by other courts to the following effect: " * * * Where accidental injury aggravated a disease and hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death at the time." Benefit Ass'n of Ry. Employees v. Armbruster, 217 Ala. 282, 284, 116 So. 164, 166.

This view of proximate cause is applied in our cases, notwithstanding the grave condition of the disease, and notwithstanding the accidental injury was such as not to be fatal but for the disease or bodily infirmity. Standard Acc. Ins. Co. of Detroit, Mich., v. Hoehn, 215 Ala. 109, 110 So. 7; Benefit Ass'n of Ry. Employees v. Armbruster, 217 Ala. 282, 116 So. 164; Id., 224 Ala. 302, 140 So. 356.

If the present policy contained only the general clause (copied in statement of the case above) defining the coverage or liability assumed by the insurer, without question the facts make a case of liability under our cases, supra.

But in the Hoehn Case, supra, we said: "In some of the cases denying recovery on facts of the same general character as those here involved the policies contained a stipulation that the insurance thereby provided did not cover 'any death which resulted wholly or in part directly or indirectly from disease or bodily infirmity,' and it may be conceded that, had the policy here in suit contained a clear and unlimited stipulation to that effect, there could be no recovery." 215 Ala. 110, 110 So. 7, 9.

And in the Armbruster Case, first appeal, this: "There is conflict in the authorities on this subject, and some of the cases are in irreconcilable conflict, but a good deal of confusion has arisen out of not drawing a distinction between certain clauses in the policy dealing with the accident or injury resulting in death and another clause excepting the liability from the terms of the policy, to wit: 'Where death has resulted wholly or in part, directly or indirectly, from disease or bodily infirmity.' " 217 Ala. 284, 116 So. 164, 166.

This distinction was again mentioned on second appeal of the Armbruster Case, supra.

Appellant strongly argues that these several announcements were dicta, in that the court was not considering policies excluding liability for death resulting, directly or indirectly, from disease or bodily infirmity; that the general clause limiting liability "effected solely" through accidental means, "as a direct result thereof independent of all other causes," is as fully exclusive as the special clause; that, having approved the proximate cause rule, as defined in our cases, its logical application demands a departure from such dictum; that the great weight of authority does not sustain any such differentiation.

Without discussion of obiter dictum or judicial dictum, it will suffice to say that these decisions expressed the considered judgment of the court in writing the law of the cases in

hand- with. its limitations; also the views of the court touching a sound basis for harmonizing conflicting decisions elsewhere.

We have made quite a full and careful study of the authorities cited by counsel on both sides, and other cases, with a view to re-examine the soundness of the distinction announced in our cases, supra, and with the further view to writing the sound rule as applicable to the case now before us.

Many cases do treat a general clause, defining the coverage in terms of like effect with the policy here involved, as excluding liability where disease or bodily infirmity is an efficient cause of death. These cases, in the main, follow the rule of concurring efficient causes, not in harmony with our cases where such general terms only are employed. But the pertinent point is that, construing such general terms as "directly, solely and exclusive or independent of all other causes" to mean the same as if death "directly or indirectly from disease or bodily infirmity" were expressly excluded, these cases generally hold there is no liability when disease or bodily infirmity is an efficient contributing cause. Leland v. Order of United Commercial Travelers of America, 233 Mass. 558, 124 N. E. 517; Freeman v. Mercantile Mut. Accident Ass'n, 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753; Cretney v. Woodmen Acc. Co., 196 Wis. 29, 219 N. W. 448, 62 A. L. R. 675; Commercial Travelers' Mut. Acc. Ass'n of America v. Fulton (C. C. A.) 79 F. 423; Bohaker v. Travelers' Ins. Co. of Hartford, Conn., 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543; Baehr v. Union Casualty Co., 133 Mo. App. 541, 113 S. W. 689; Fetter v. Fidelity & Casualty Co. of New York, 174 Mo. 256, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. Rep. 560; New Amsterdam Casualty Co. v. Shields (C. C. A.) 155 F. 54; National Life & Acc. Ins. Co. v. Cox, 174 Ky. 683, 192 S. W. 636; Stanton v. Travelers' Ins. Co., 83 Conn. 708, 78 A. 317, 34 L. R. A. (N. S.) 445; Kerns v. Ætna Life Ins. Co. (C. C. A.) 291 F. 289.

Authorities following the doctrine of concurring causes, we believe, uniformly and logically deny liability where, as here, there is an additional clause excluding cases wherein the death results "directly or indirectly from disease or bodily infirmity," provided such disease or infirmity was an efficient cause of death. National Masonic Acc. Ass'n of Des Moines v. Shryock (C. C. A.) 73 F. 774; Tennant, Adm'r, etc., v. Travelers' Ins. Co. (C. C. Cal.) 31 F. 322; White v. Standard Life & Accident Ins. Co., 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83; Maryland Casualty Co. v. Glass, 29 Tex. Civ. App. 159, 67 S. W. 1062; Carr v. Pacific Mutual Life Ins. of Cal., 100 Mo. App. 602, 75 S. W. 180; Hubbard v. Travelers' Ins. Co. (C. C.) 98 F. 932; Hubbard v. Mutual Acc. Ass'n (C. C.) 98 F. 930; Kangas v. New York Life Ins. Co., 223 Mich. 238, 193 N. W. 867; Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 171 N. E. 914; Runyon v. Commonwealth Casualty Co., 154 A. 397, 9 N. J. Misc. 487; Greenlee v. Kansas City Casualty Co., 192 Mo. App. 303, 182 S. W. 138.

Finally, cases construing the general coverage clause in line with our cases, and applying the same doctrine of proximate cause thereto, either differentiate same from policies expressly excluding death "resulting directly or indirectly from disease or bodily infirmity," or terms of similar import, or had no occasion to do so. Fidelity Casualty Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493 (quoted in our Hoehn Case, supra); Pacific Mut. Life Ins. Co. v. Smith, 166 Ark. 403, 266 S. W. 279; Home Ben. Ass'n of Paris, Tex., v. Smith (Tex. Civ. App.) 16 S.W. (2d) 357; Greenlee v. Kansas City Cas. Co., supra.

It seems, therefore, the great weight of authority supports the views expressed in our cases, viz. where there is special provision directing the attention of the insured to disease or bodily infirmity, and expressly excluding liability in case of death resulting directly or indirectly therefrom, some effect must be given to such provision; and liability denied in cases of like character as our Hoehn and Armbruster Cases.

But this does not mean that mere feebleness, nor predisposition to recurrence of former disease, nor every infirmity which may aggravate the effects of an accidental injury, is to be regarded as the cause of death.

The general rules of construing insurance policies favorably to the insured apply to these clauses touching bodily infirmity, etc.

This court, in line with others, has emphasized such construction as will give the insured all the protection which he had good reason to expect.

We have selected two cases from eminent courts giving expression to views we deem sound and just.

In Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 171 N. E. 914, the policy contained general and special clauses to like effect as the case at bar. We quote at length from the decision by Chief Justice Cardozo:

"The insured, while lifting a milk can into an ice box, slipped and fell, the can striking him on the abdomen and causing such pain that he was unable to get up. A surgeon, opening the abdomen, found a perforation at the junction of the stomach and the duodenum, through which the contents of the stomach escaped into the peritoneum, causing peritonitis and, later, death. At the point of perforation there had been a duodenal ulcer, about the size of a pea. The existence of this ulcer was unknown to the insured, and, were it not for the blow, would have had no effect

upon his health, for it was dormant and not progressive, or so the triers of the facts might find. Even so, there had been a weakening of the wall in some degree, with the result that the impact of the blow was followed by perforation at the point of least resistance. The question is whether death was the result of an accident to the exclusion of other causes.

"We think the evidence sustains a finding that the ulcer was not a disease or an infirmity within the meaning of the policy. Left to itself, it would have been as harmless as a pimple or a tiny scratch. Only in the event that it was progressive would it become a source of pain or trouble. If dormant, as it was found to be, it was not only harmless in itself, but incapable of becoming harmful except through catastrophic causes, not commonly to be expected. In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. Eastern Dist. Piece Dye Works v. Travelers' Ins. Co., 234 N. Y. 441, 453, 138 N. E. 401, 26 A. L. R. 1505. 'Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract.' Bird v. St. Paul Fire & Marine Ins. Co., 224 N. Y. 47, 51, 120 N. E. 86, 87, 13 A. L. R. 875 ; Goldstein v. Standard Accident Ins. Co., 236 N. Y. 178, 183, 140 N. E. 235, 236 ; Van Vechten v. American Eagle Fire Ins. Co., 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115. A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules.

"A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency. Leland Order of United Commercial Travelers of America, 233 Mass. 558, 564, 124 N. E. 517 ; Collins v. Casualty Co. of America, 224 Mass. 327, 112 N. E. 634, L. R. A. 1916E, 1203 ; Mutual Life Ins. Co. of New York v. Dodge (C. C. A.) 11 F. (2d) 486, 489, 59 A. L. R. 1290, certiorari denied, 271 U. S. 677, 46 S. Ct. 629, 70 L. Ed. 1147 ; Taylor v. New York Life Ins. Co., 176 Minn. 171, 174, 222 N. W. 912, 60 A. L. R. 959. * * *

"An ulcer as trivial and benign as an uninfected pimple is at most a tendency to an infirmity, and not an infirmity itself."

This decision further quotes approvingly from Leland v. Order of United Commercial Travelers of America, 233 Mass. 558, 124 N. E. 517, 519, opinion by Chief Justice Rugg, which we now consider. In Massachusetts the doctrine obtains that the general coverage clause is to be given like effect as we have given the special clause in the instant case. In the Leland Case supra, the insured was apparently in good health. He tripped and fell twice, causing slight abrasions, and died the same afternoon. We quote from the opinion:

" * * * The utmost which could have been found in favor of the plaintiff was that the deceased was suffering at the time of and before the fall from a seriously diseased condition of the heart or lungs, or both, which was precipitated to a fatal termination by the fall, but which probably would not have terminated thus on that day, but for the fall. Such a fall as the deceased suffered would not have been fatal except for the diseased condition of vital organs. These two causes, namely, the diseased condition and the fall, operated together, each contributing to the fatal result.

"The principle of law, which is controlling under such a contract as that here relied upon, in the light of such facts as are disclosed on this record, was declared in Freeman v. Mercantile Mut. Accident Ass'n, 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753, in an opinion by Mr. Justice Knowlton. That principle is:

" 'Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause, and, in dealing with such cases, the maxim, "Causa proxima non remota spectatur," is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause. It means that the law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different ; and this is so, as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes.' * * *

"The application of that principle of law to the case at bar is that, if the insured was suf-

fering from a disease, which was accelerated and aggravated by the accident so as to be a cause co-operating with it to produce the fatal end, then there can be no recovery. Manifestly recovery is not barred merely because the insured is suffering from disease. One upon a bed of illness may meet death by an explosion or other accidental means. Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543. If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state. Cheswell v. Fraternal Accident Ass'n, 199 Mass. 267, 85 N. E. 96; Collins v. Casualty Co. of America, 224 Mass. 327, 112 N. E. 634, L. R. A. 1916E, 1203.

"The inevitable result is that under this statement of the law the plaintiff cannot recover upon these facts. The deceased confessedly was suffering from disease or diseases which actively co-operated with the fall in causing death. The disease and the fall were concurring, efficient and proximate causes in producing the death. Either alone without the other would not then have resulted fatally."

Held, as matter of law, the plaintiff failed to make out a case.

█ Upon like reasoning, we hold upon plaintiff's evidence in the case at bar the insured had a "bodily infirmity" which was an efficient cause of death.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, and FOSTER, JJ., concur.