256 F.2d 115
 NEW YORK LIFE INSURANCE COMPANY, Appellant,
v.
Henry P. JOHNSTON, Jr., Appellee.
 No. 17083.
 United States Court of Appeals Fifth Circuit.
 June 10, 1958.
 
 Andrew J. Thomas, Birmingham, Ala. (Burr, McKamy, Moore & Thomas, Birmingham, Ala., of counsel), for appellant.
 Burgin Hawkins, Robert C. Garrison, Birmingham, Ala., for appellee.
 Before RIVES, JONES and BROWN, Circuit Judges.
 RIVES, Circuit Judge.
 
 
 1
 This appeal is from a judgment for the plaintiff in an action for the double indemnity provided in two life insurance policies each in the face amount of five thousand dollars. The pertinent provisions in the two policies are identical, being as follows:
 
 
 2
 "Double
 DOUBLE THE FACE OF THIS POLICY
 Indemity
 
 
 3
 upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury.
 
 
 4
 "This Double Indemnity benefit will not apply if the Insured's death resulted from self-destruction, whether sane or insane; from any violation of law by the Insured; from Military or Naval Service in time of war; from a state of war or insurrection; from engaging in submarine or aeronautic operations; from physical or mental infirmity; or directly or indirectly from illness or disease of any kind. The Company shall have the right and opportunity to examine the body, and to make an autopsy unless prohibited by law."
 
 
 5
 The first question, preserved by denials of defendant's motions for directed verdict, for judgment notwithstanding the verdict, and for new trial, is whether there was sufficient evidence to support the jury's verdict. The appellant insists that there was no substantial evidence to prove "that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause," and not "from physical or mental infirmity; or directly or indirectly from illness or disease of any kind."
 
 
 6
 At the time of his death, the insured was 82 years and 9 months old. He neither smoked nor drank intoxicants, and was, generally speaking, a man of temperate habits. His occupation was that of a travelling salesman, in which he usually drove his automobile. He engaged in that occupation up until seventeen days before his death, at which time he fell down the steps in his home. Until that fall, he was erect in carriage, walked briskly, was keenly interested in current affairs, and his sight and hearing were good. He had never had a serious illness of any kind.
 
 
 7
 On the morning of August 4, 1956, he fell down six of the thirteen steps between the first and second floors of his house. The fall resulted in a slight discoloration on his left temple, his legs were skinned, and some of the fingers of his right hand were fractured. Except for keeping one business engagement in town on the day of his fall, the insured did not work thereafter. He steadily went down, lost his appetite, lost interest in people and in his personal appearance, complained of pain around his neck and shoulders, and became confused in his mental processes. After the fall, he spent the majority of his time during the day lying on a couch.
 
 
 8
 On the morning of August 21, he was found in the bathroom, sitting on the commode, in a slumped over position; he could not speak coherently. The solid top of the commode was down, but there was evidence of his having vomited in an adjacent lavatory. He died in less than two hours.
 
 
 9
 The attending physician certified that his death was due to "cerebral hemorrhage."[1] There was no autopsy. The testimony went to show that without an autopsy a physician cannot be positive as to the cause of death in such cases, and that, in tests, autopsies had revealed that a number of deaths thought to have been caused by cerebral hemorrhage were in fact caused by subdural hematoma resulting from injuries.
 
 
 10
 The insured's regular physician testified that during the years 1955 and 1956, prior to his fall on August 4, 1956, he had treated the insured for high blood pressure and arteriosclerosis; that on July 5, 1955, his blood pressure reading was 208 over 98, which was abnormal for a man of his age and moderate habits; that thereafter his blood pressure varied on account of the treatment but remained about the same; that his blood pressure on August 14, ten days after the fall, was 202 over 102; that he could then see that he was worse, "he was groggy and sort of incoherent."
 
 
 11
 The evidence was in conflict as to whether the arteriosclerosis and high blood pressure before the fall were of such severity as to be termed a disease. One of the physicians testified that he would not consider them such unless they produced "some morbid change or morbid state." Prior to the fall, they had not produced any marked personality changes, nor caused the insured to stop work as a travelling salesman, nor to stop driving his automobile. The district court charged the jury fully and fairly on this issue.[2]
 
 
 12
 The answer to the question as to whether substantial evidence supports the verdict depends, of course, upon the details of the evidence in each particular case, and a discussion of the many cases cited by the parties would be of no real value. We need only say that, while here the question is a close one, we agree with the district court that the evidence made a case for the jury.
 
 
 13
 Appellant's only other insistence is that the district court erred in instructing the jury in its oral charge as follows:
 
 
 14
 "There has been testimony of expert witnesses in the case, that is to say Doctors. Ordinarily it is common sense that men should not ignore the testimony of experts in their lines. They should not captiously or carelessly disregard what they say. No juror is bound by the testimony of an expert witness because normally as in this case that testimony is opinion testimony and ordinarily you and I are not bound by the opinions of our fellow men. We should weigh those opinions in the light and the skill and the ability of those men and the facts upon which they base those opinions but we are not conclusively bound by them."
 
 
 15
 The form in which appellant's counsel reserved an exception to that portion of the charge is significant:
 
 
 16
 "Mr. Thomas: We wish also to except to that portion of the Court's charge in which he told the jury in effect that they were not bound by the opinion of experts. (Emphasis supplied.)
 
 
 17
 "The Court: I will stand on that.
 
 
 18
 "Mr. Thomas: Do you want us to state any grounds for that?
 
 
 19
 "The Court: No, sir."
 
 
 20
 The general rule is that opinion testimony of expert witnesses is not of controlling effect, and a jury is not absolutely required to accept opinions of experts in the place of its own judgment.[3] There is, of course, a recognized distinction between opinion testimony and factual testimony by an expert witness.[4] In some Alabama cases also, it has been held that opinion testimony may require the giving of the affirmative charge, with hypothesis on belief of evidence, when there is no reason for the exercise of common knowledge against such opinions,[5] or "when * * * the opinion of experts is based upon facts, such as tests and examinations."[6]
 
 
 21
 In the present case, the actual facts, such as blood pressure readings, testified to by the expert witnesses were few, and we cannot believe that the jury, in the light of the wording of the court's charge, could have understood that it was authorized to disregard such facts. The objection to the charge limited to "the opinion of experts" shows that appellant's counsel did not apprehend that the jury would disregard factual testimony. We will assume that all of the Alabama rules are binding as to a jury's function in a federal court.[7] We cannot, however, say as a matter of law in this case that the jury could have no reason for the exercise of its common knowledge against the opinions of the experts. Further, most of the testimony by experts in this case was not based upon any autopsy or any other tests or examinations, but was pure opinion evidence. In any event, any possible error which may have lurked in the court's charge probably did not affect the substantial rights of the parties. See Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A.
 
 
 22
 Finding no reversible error in the record, the judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 An Alabama statute provides that a death certificate is "presumptive evidence of the facts therein stated." 1940 Code of Alabama, Title 7, Sec. 386
 
 
 [2]
 "There is evidence in this case that Henry P. Johnston was afflicted with or affected by arteriosclerosis and by hypertension. You heard testimony in regard to his age. Now you are to look at the evidence in this case to determine whether or not the condition of arteriosclerosis and hypertension, which conditions were present in the insured at the time of fall under the undisputed evidence in this case, whether those conditions constituted a disease or illness within the meaning of the policy or whether or not they merely constituted a condition. The Supreme Court of Alabama has so clearly in my opinion stated the proposition that I am going to depart from my usual custom and read to you one of the opinions of the Supreme Court because I think the manner in which they state it is clearly understandable. The Supreme Court has said that the disease or the infirmity — and we are dealing with those words in this case and words which were present in the double indemnity feature of the policy considered by the Supreme Court of Alabama in the case of the First National Bank of Birmingham against Equitable Life Assurance Society. That case for the information of counsel who are familiar with it is reported in 225 Alabama [586] and I am turning to page 590 of that report [144 So. 451]. `The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. A distinction then is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or infirmity and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity but at most a predisposing tendency.'
 "So you are to look to the evidence in this case to determine for yourselves as men who are accustomed to common speech whether or not the arteriosclerosis and the hypertension, which I understand ordinarily accompany each other where either is found, as to whether or not that was merely a condition which was not abnormal in degree in a man 83 or 84 years of age or whether the arteriosclerosis and the hypertension which he had was abnormal for a man that age. And if you are reasonably satisfied that the arteriosclerosis and hypertension were not abnormal for a man of the age of the insured and therefore did not constitute disease or infirmity within the meaning of the policy and you are reasonably satisfied that the fall and consequent injury served to accelerate the death of the insured, then the plaintiff would be entitled to a recovery in this case.
 "On the other hand if you are reasonably satisfied from the evidence in this case that arteriosclerosis and hypertension were present in the insured to a degree which would appear to you after considering all of the evidence in this case to have been abnormal for a man of his years, and that that condition joined with the fall and the injury, that condition as a disease or infirmity joined with the fall to produce death, then the plaintiff would not be entitled to a recovery."
 
 
 [3]
 Aetna Life Insurance Co. v. Ward, 1890, 140 U.S. 76, 82, 88, 11 S.Ct. 720, 35 L.Ed. 371; 20 Am.Jur. Evidence, Sec. 1208; 32 C.J.S. Evidence § 567
 
 
 [4]
 Commonwealth Life Ins. Co. v. Harmon, 1934, 228 Ala. 377, 153 So. 755, 758
 
 
 [5]
 Metropolitan Life Ins. Co. v. Halsey, 1935, 230 Ala. 193, 160 So. 248, 249; Commonwealth Life Ins. Co. v. Harmon, supra
 
 
 [6]
 Aetna Life Insurance Co. v. Norfleet, 1937, 232 Ala. 599, 169 So. 225, 226; New York Life Ins. Co. v. Horton, 1938, 235 Ala. 626, 180 So. 277, 282
 
 
 [7]
 See Byrd v. Blue Ridge Rural Electric Co-op., 78 S.Ct. 893