This is an appeal from a judgment on a jury verdict in the Circuit Court of Coffee County for plaintiff on an insurance claim. We affirm.
On January 13, 1976, Viola Stinchcomb, the sister of plaintiff Margaret Nichols, fell while at work and broke her hip. The following day she underwent surgery for the injury and was later released from the hospital on January 28. On February 13, she was readmitted to the hospital after having awakened her sister and niece during the night of February 11, screaming for help, complaining of severe headaches, and vomiting. On February 17, she was transferred to Jackson Hospital in Montgomery and admitted with a diagnosis of subarachnoid hemorrhage of a Berry aneurysm (stroke or cerebral hemorrhage). On March 15, she suffered a second hemorrhage, after which her condition steadily deteriorated until her death on April 2. Mrs. Nichols testified to a noticeable decline in her sister's mental and physical condition from the time of her fall until her death.
On April 18, 1977, Mrs. Nichols, as executrix of her sister's estate, filed a complaint which was later amended at the pretrial conference. Appellant, Metropolitan Life Insurance Company, filed its answer on May 26, after its motion to dismiss was overruled. By agreement of the parties medical depositions were taken on September 18 and 28. On January 10, 1980, a judgment on a jury verdict was entered for appellee in the amount of $14,700.00. On January 16, defendant moved for a new trial, or in the alternative, judgment notwithstanding the verdict. Both motions were denied on February 7. Appellant appeals from both the judgment on the jury verdict and the order denying appellant's motion for new trial or judgment notwithstanding the verdict.
The first issue to be decided is whether appellee Nichols's jury charges relating the law governing the application of general and additional clauses in accidental death policies were properly given. We hold that they were.
The insurance policy at issue contained two relatively standard clauses: (1) a general clause providing recovery for injuries caused directly and exclusively by external, violent, and accidental means; and (2) an additional clause excluding benefits for loss resulting directly or indirectly, wholly or partly, by disease or bodily or mental infirmity. The issue of the interrelationship and applicability of these type clauses found within a single insurance policy was addressed by this Court in Wilson v. Liberty National Life Insurance Co.,331 So.2d 617 (Ala. 1976), wherein we stated:
 In Alabama, policy language similar to that contained in the "general clause" has been construed to mean that "if the accident aggravated a disease and hastened the death of the insured, the accident is yet considered the proximate cause of the insured's death, notwithstanding the gravity of the disease or that the accidental injury would not have been fatal but for the infirmity." [Emphasis supplied.] Liberty Nat'l Life Ins. Co. v. Reid, 276 Ala. 25, 33, 158 So.2d 667, 674 (1963).
 However, our cases also hold that where the policy contains the "additional clause" then no recovery can be had where death results from the combined
effects of an accident and a pre-existing disease which was accelerated and aggravated by the accident. First Nat'l Bank v. Equitable Life Assurance Soc. of the United States, 225 Ala. 586, 590-91, 144 So. 451, 455 (1932); Liberty Nat'l Life Ins. Co. v. Reid, supra.
 With respect to the "additional clause," our cases also hold, as stated by Bouldin, J., in Equitable, supra:
 "But this does not mean that mere feebleness, nor predisposition to recurrence of former disease, nor every infirmity which may aggravate the effects of an accidental injury, is to be regarded as the cause of death.
 "The general rules of construing insurance policies favorably to the insured apply to these clauses touching bodily infirmity, etc."
. . . . . *Page 968 
 Thus, it is that Harwood, J., in Reid, supra, concluded:
 "If an injury starts a chain reaction resulting in death, recovery may be had even if one of the links in the chain is old age, frailty and some links are dormant diseases or physical conditions without which the chain would be broken. Each case must be particularized."
We find that the contested jury charges were predicated upon the aforementioned "chain reaction" theory and, as such, aptly stated and related Alabama law to the facts at hand.
Furthermore, our cases hold that "where the evidence is conflicting as to whether an accident was the cause of an insured's death, or whether the accident and a disease cooperating therewith combined to cause death, then ordinarily a question of fact within the resolution of the trier of fact is presented." Wilson v. Liberty National Life Insurance Co.,331 So.2d 617 (1976); Liberty National Life Insurance Co. v.Reid, 276 Ala. 25, 158 So.2d 667 (1963). Without quoting extensively from the trial record, we find ample evidence to support a question of fact presentable to the jury based upon the "chain reaction" theory. There was expert testimony to the effect that the initial fall, injuries, pain, and other emotional distress could have placed additional demands upon the deceased's circulatory system in such a way as to play a precipitating role in the rupture of the dormant Berry aneurysm. Although none of the medical experts could conclusively causally relate the fall to the rupture of the aneurysm, none could conclusively rule it out either. Testimony also established that a Berry aneurysm is congenital in nature and that an aneurysm of this type, without a history of prior leakage, would be termed dormant.
On the basis of the preceding testimony, we find that there was sufficient evidence to support the jury verdict.
Next, we are asked to determine whether the trial court committed reversible error in allowing Mrs. Nichols's attorney, on cross-examination, to read certain portions of Gray'sAttorney's Textbook of Medicine to Metropolitan Life's expert witnesses and to ask these witnesses whether they agreed or disagreed with the treatise. The law is well established in this jurisdiction that excerpts from a medical treatise admitted or proven to be a standard in the medical profession may be admitted into evidence. E.g., Stoudenmeier v.Williamson, 29 Ala. 558 (1857). In the instant case, however, the expert witnesses testified that they were not familiar with either the treatise or its author.
In Smarr v. State, 260 Ala. 30, 68 So.2d 6 (1953), this Court stated:
 But relevant extracts from medical treatises are not in themselves self-proving, but are admissible only when recognized and approved by the medical profession as standard. The work in question was not shown to be a standard work or recognized authority by the medical profession on the subject at issue, and the rulings of the court in regard thereto were without error.
However, in this case, plaintiff's counsel did not offer the statements referred to in the textbook as evidence. He merely used them for the purpose of inquiring of the expert witnesses as to whether the witnesses agreed with the statements. We find no reversible error.
Accordingly, we find the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur. *Page 969