**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-2432**

JENNIFER ELAINE HALL,

                                    Plaintiff - Appellant,

        versus

METROPOLITAN LIFE INSURANCE COMPANY, a/k/a
MetLife, Incorporated; GENERAL ELECTRIC
COMPANY, a/k/a GE; GE LIFE, DISABILITY AND
MEDICAL PLAN,

                                    Defendants - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  Glen E. Conrad, District Judge.
(CA-05-304)

Argued:  October 30, 2007          Decided:  December 27, 2007

Before NIEMEYER, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion,
in which Judge Niemeyer and Judge Shedd joined.

**ARGUED:** Richard Franklin Hawkins, III, Richmond, Virginia, for
Appellant.  Lowell D. Kass, METROPOLITAN LIFE INSURANCE COMPANY,
Long Island City, New York, for Appellees.  **ON BRIEF:** Susan A.
Waddell, WOOTENHART, P.L.C., Roanoke, Virginia, for Appellant.
Eric W. Schwartz, Sandra Compton Simmons, TROUTMAN SANDERS, L.L.P.,
Virginia Beach, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiff-Appellant Jennifer E. Hall ("Hall") appeals the district court's grant of summary judgment to Defendant-Appellee Metropolitan Life Insurance Company ("MetLife") on her action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover accidental death and dismemberment benefits and personal accident insurance benefits in the amount of $284,208.00. Hall claimed these benefits as the widow and sole beneficiary of Tommie B. Hall (the "decedent"), an employee of General Electric Company who suffered a fatal allergic reaction to a bee sting. The decedent was insured under an employee welfare benefits plan that excluded coverage for losses contributed to or caused by disease or physical impairment. The district court held that MetLife properly denied coverage based on this exclusion. For the following reasons, we affirm.

I.

On July 16, 2004, the decedent, age 37, was stung by a bee on the bridge of his nose. Within minutes, his tongue swelled; he stopped breathing and lost consciousness. Emergency personnel were unable to revive him, and he was pronounced dead little more than an hour after he was stung. The death certificate listed anaphylaxis as the immediate cause of death, noting the bee sting as an underlying cause. The hospital disposition summary listed

3

diagnoses of anaphylaxis and cardiac arrest.  The decedent's family physician agreed that the decedent died after suffering anaphylactic shock from a bee sting, but she noted no prior history of bee sting allergies.  An independent consulting physician, retained by MetLife, reviewed the medical records and opined that the decedent likely had an allergy to stinging insects that was not reflected in the medical records, and that this allergy caused the anaphylactic reaction resulting in his death.

Prior to his death, the decedent had been employed by the General Electric Company ("GE") and covered under the GE Life, Disability and Medical Plan (the "Plan").  As relevant here, the Plan provided accidental death and dismemberment ("AD&D") and personal accident insurance ("PAI") benefits.[1]  Under the Plan, MetLife served as the claims administrator:

> [MetLife] will make all determinations with respect to benefits under this Plan.  Accordingly, the management and control of the operation and administration of claim procedures under the Plan, including the review and payment or denial of claims and the provision of full and fair review of claim denial pursuant to Section 503 of [ERISA], shall be vested in [MetLife].

J.A. 171.[2]

---

[1]The Plan also included basic life insurance benefits, for which MetLife found Hall eligible in the amount of $118,420.00.

[2]This language comes from the PAI section of the Plan.  The AD&D section contains substantially the same language, except that the first sentence reads, "Determinations of all benefit payments under the Plan will be made by [MetLife]."  J.A. 151.

4

There is no dispute in this case that the bee sting suffered by the decedent was an accident. The GE Benefits Handbook explains the circumstances in which accidental losses are not covered under the Plan:

> Benefits under [the AD&D and PAI sections of the Plan] are not paid for losses contributed to or caused by: <u>Disease</u> or medical or surgical treatment of such disease; [i]ntentionally self-inflicted injury; <u>[p]hysical or mental impairment</u> or medical or surgical treatment of such impairment; or [i]nsurrection or any act of war, whether declared or undeclared.

J.A. 365 (emphasis added). After receiving Hall's claim as the beneficiary under the decedent's policy, and quoting this exclusionary language, MetLife denied the claim on "the basis of . . . the Plan's exclusions for accidental losses contributed to or caused by disease and/or physical impairments." J.A. 715.

The denial letter cited the death certificate, the hospital disposition summary, the letter from the decedent's family physician, and the independent physician consultant's report, concluding that these records "demonstrate[d] that decedent's allergy to bee stings was both a disease and physical impairment which caused and/or contributed to his death." J.A. 714. MetLife relied extensively on the independent physician consultant's report, in which the doctor cited authority to the effect that a bee-sting allergy is a "disease," J.A. 718-19, opined that "[a]n allergy is [also] a physical impairment when the allergy is activated," J.A. 719, and rendered the opinion that the decedent

5

had an allergy to stinging insects even though no such allergy was noted in his medical records. The report concluded that the decedent's reaction to the bee sting was consistent with a severe allergic reaction and that this reaction caused the decedent's death. J.A. 718-19.

Hall appealed the denial, arguing that there was no evidence that an allergy was a contributing cause of the decedent's death-- only evidence that the decedent died as a result of being stung on the bridge of his nose. Hall also argued that even if the decedent had a pre-existing sensitivity or allergy to bee stings, this condition was not a "disease" or "impairment." Hall further argued that when an injury activates a <u>dormant</u> disease, the <u>injury</u> should be held to be the direct and exclusive legal cause of death, thereby allowing her to recover. MetLife found Hall's assertion regarding causation to be contrary to the uncontroverted medical evidence and reiterated its earlier conclusion that the decedent's bee-sting allergy was a disease and a physical impairment that contributed to or caused his death.[3] MetLife then wrote,

> Finally, an additional basis [for denial] exists under the coverage language, which requires that the loss result solely and directly from an accident. . . . [W]e find that [the decedent's] death did not result solely

---

[3]Regarding the question of whether an allergy is a disease, MetLife cited a website submitted by Hall during the appeal process for the propositions that "Allergies are disorders of the immune system" and that "Anaphylactic shock, also called anaphylaxis, is a severe, life threatening reaction to certain allergens." J.A. 667, 671.

6

and directly from an accident. . . . [W]e must uphold the denial of your client's claim based on the requirement that the loss be solely and directly due to an accident, and the Plan's disease and physical impairment exclusions listed above. This letter concludes the administrative review process.

J.A. 668.

Hall initiated this action in Virginia state court. MetLife removed to the United States District Court for the Western District of Virginia. On cross-motions for summary judgment, the district court concluded that MetLife had not abused its discretion in denying Hall's claim based on the aforementioned exclusion. Hall v. Metro. Life Ins. Co., 398 F. Supp. 2d 494, 499 (W.D. Va. 2005). At Hall's suggestion, the court in the alternative reviewed the denial de novo but nevertheless found that the record evidence that the decedent suffered anaphylactic shock from a bee sting was "overwhelming," and that the decedent's allergic reaction fell within the parameters of the disease or physical impairment exclusion. Id. at 501. This appeal followed.

II.

A.

Under our well-settled framework for reviewing denials of benefits under ERISA plans, we examine the district court's grant of summary judgment de novo. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 123 (4th Cir. 1994). Where a Plan gives a claims administrator discretion to construe plan terms or

determine eligibility for benefits, we review the administrator's denial decision for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232-33 (4th Cir. 1997). Otherwise, the denial is reviewed de novo. Bruch, 489 U.S. at 115. Of course, we review de novo the threshold matter of whether the Plan language at issue limits us to abuse-of-discretion review. Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir. 1996).

MetLife argues that the Plan language in this case contains sufficient discretion-conferring authority to require review under the deferential abuse-of-discretion standard. Although we are inclined to disagree, we need not resolve the issue since, as the district court noted, the outcome here would be the same under either standard. Assuming the applicability of de novo review, which is more favorable to Hall, we assess whether the denial of AD&D and PAI benefits to Hall was appropriate. We are limited to the evidence that was before MetLife at the time it made its decision unless we determine that additional evidence is necessary to facilitate an adequate de novo review of the denial. Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1025 (4th Cir. 1993).

B.

Hall urges us to review only the rationale contained in the initial denial letter, J.A. 715 ("the basis of MetLife's denial of

8

[Hall's] claim is the Plan's exclusions for accidental losses contributed to or caused by disease and/or physical impairments"), and not consider the additional rationale for the denial offered by MetLife for the first time in its denial of Hall's appeal, J.A. 668 ("the requirement that the loss be solely and directly due to an accident"). In doing so, Hall relies on the ERISA requirement that,

> [i]n accordance with [applicable regulations], every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. ERISA's implementing regulations explain that a claimant must initially be provided with, inter alia, "[t]he specific reason or reasons for the adverse determination," and "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(i)-(ii). The claimant must then be given "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits," and the claims administrator must take any such materials submitted into account in deciding the appeal. § 2560.503-1(h)(2)(ii), (iv). Under either standard of review--de novo or abuse of discretion--the administrator must comply with these procedural guidelines. See Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 158 & n.3 (4th Cir. 1993).

The safeguards in 29 U.S.C. § 1133 and the implementing regulations "have been read as ensuring that a full and fair review is conducted by the administrator, that a claimant is enabled to prepare an appeal for further administrative review or recourse to the federal courts, and that the courts can . . . review[] a claim denial." Ellis, 126 F.3d at 236-37 (emphasis added). For that reason, this court has previously held, albeit in an unpublished opinion, that 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 require that judicial review be "limited to whether the rationale set forth in the initial denial notice is reasonable." Thompson v. Life Ins. Co. of N. Am., 30 F. App'x 160, 164 (4th Cir. 2002) (unpublished) (emphasis added); see also Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 393 (5th Cir. 2006) (holding that under § 1133 the administrative review must focus on the specific reason for the administrator's decision cited in the initial denial notice); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006) ("[A]n administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA."); McCartha v. Nat'l City Corp., 419 F.3d 437, 446 (6th Cir. 2005) (holding that an administrator was not in substantial compliance with § 1133 where the initial denial notice omitted one of the grounds later relied on for the denial of benefits); Abram v. Cargill, Inc., 395 F.3d 882, 886 (8th Cir. 2005) (noting that

10

ERISA's procedural requirements are intended to generate a "meaningful dialogue" between claim administrators and beneficiaries and to avoid beneficiaries being "sandbagged by post-hoc justifications of plan decisions") (internal quotations omitted); Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 287 (2d Cir. 2000) (same).

The district court below erroneously reasoned that the limitation suggested by these cases would render superfluous another of ERISA's procedural safeguards--the requirement that the administrator, in reviewing an appeal of a denial, consider new materials "submitted by the claimant relating to the claim" after the initial denial. 29 C.F.R. § 2560.503-1(h)(2)(iv). Hall, 398 F. Supp. 2d at 501. In doing so, the court failed to distinguish between the obligation of a claim administrator to provide sufficient notice of the precise reason for a denial and the right of a claimant to submit additional information in response to the reason given. The statutory and regulatory text and the case law demand that judicial review take into account only reasons for an adverse benefits determination offered in the initial denial notice, because these are the only rationales on which a claimant might have arguably been given a "full and fair" opportunity to respond during the administrative process. See Ellis, 126 F.3d at 237. Therefore, in this case, we will limit our review to

11

MetLife's initial denial based on the Plan's disease and physical impairment exclusions.[4]

## III.

Courts have long grappled with policy exclusions such as the one at issue in this case, which could conceivably preclude coverage in all but a few accident cases. See J.A. Bock, Annotation, <u>Pre-existing Physical Condition as Affecting Liability Under Accident Policy or Accident Feature of Life Policy</u>, 84 A.L.R.2d 176 (1962). For example, an insured driver in a fatal automobile accident whose end was hastened somewhat by his pre-existing heart disease, even where experts agreed that a perfectly healthy individual would have died under like circumstances, would arguably not be covered under the policy (the disease having contributed, albeit in a minor way, to his death). The waters become murkier still if we depart from the seemingly scientific term "disease" and also consider death contributed to or caused by "impairment" or "infirmity," which could conceivably include

---

[4]Our customary course of action when faced with an administrator which has failed to comply with ERISA's procedural requirements is to remand the case to the administrator for a full and fair review. See <u>Weaver</u>, 990 F.2d at 159; <u>Berry v. Ciba-Geigy Corp.</u>, 761 F.2d 1003, 1007 n.4 (4th Cir. 1985). Here, however, because our de novo review leads us to conclude that the plan exclusion cited in the initial denial letter precludes an award of benefits in this case, remand would be futile. Accordingly, we decline to issue the customary remedy of remand, instead curing MetLife's violation by simply reviewing the case as though the new rationale in the appeal denial had not been given.

anything from high blood pressure to the common frailties of youth or old age.[5]  Indeed, it is difficult to conjure up scenarios in which no argument could be made that <u>some</u> disease or infirmity contributed to an accidental loss.  <u>Landress v. Phoenix Mut. Life Ins. Co.</u>, 291 U.S. 491, 499 (1934) (Cardozo, J., dissenting) ("Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.") (internal quotations omitted).

In this context, one court has recognized the existence of a "long-standing allegorical tug-of-war" between insurance companies and the courts (with beneficiaries serving merely as "highly partisan spectator[s]").  <u>Collins v. Metro. Life Ins. Co.</u>, 729 F.2d 1402, 1404 (11th Cir. 1984).  At one extreme, insurance companies can be characterized as proffering an interpretation of policy provisions in which "accidental death" coverage applies only on facts "which [are] the equivalent of a truck dropping from the skies, striking squarely and killing instantly a perfectly fit human specimen clutching a just-issued physician's clean bill of health."  <u>Id.</u>  At the other, the beneficiary of a particularly

---

[5]Lest we be accused of presenting outrageous extremes, we note that, at oral argument, counsel for MetLife suggested that a hypothetical snake-bite allergy afflicting a random fifty percent of the population, or, alternately, everyone under the age of twelve, would be an infirmity or impairment precluding coverage under the policy (though he later retracted the statement as it pertained to those under age twelve).

fragile decedent might claim coverage even when an insignificant trauma had disproportionately debilitating consequences.

Hall encourages us to solve the causation dilemma before us by drawing a sharp line of demarcation between the accidental bee sting and the allergy, which Hall characterizes as merely a dormant condition activated by the bee sting. See Appellant's Br. at 44. Under Hall's theory, the allergy must be viewed as arising only after, and as a consequence of, the bee sting for purposes of determining legal causation.[6]

Our precedent does not permit such fine distinctions. In Adkins v. Reliance Standard Life Ins. Co., 917 F.2d 794, 797 (4th Cir. 1990), we concluded that,

> "[A] pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss. . . . [A] 'pre-disposition' or 'susceptibility' to injury, whether it results from congenital weakness or from previous illness or injury, does not necessarily amount to a substantial contributing cause. A mere 'relationship' of undetermined degree is not enough."

Id. at 797 (quoting Colonial Life & Accident Ins. Co. v. Weartz, 636 S.W.2d 891, 894 (Ky. Ct. App. 1982)). We later refined this into a two-prong test: (1) whether there is a pre-existing disease, pre-disposition, or susceptibility to injury; and (2) if so, whether the pre-existing disease, pre-disposition, or

---

[6]Paradoxically, Hall elsewhere argues that "the sting and the allergy are one-in-the-same and cannot be separated for causation purposes." Reply Br. at 18.

14

susceptibility to injury substantially contributed to the disability or loss. Quesinberry, 987 F.2d at 1028. Adkins and Quesinberry control the result here.

On the first Quesinberry prong, Hall argues that the evidence of record does not support a conclusion that the decedent suffered from a bee-sting allergy prior to his death. Hall offers a somewhat disingenuous characterization of the decedent's doctor's report in support of her position by representing that "Decedent's treating physician clearly stated that Decedent suffered from no such prior allergy." Appellant's Br. at 46. In fact, the doctor's letter stated, "[Decedent] had no history of bee sting allergy. I have reviewed his entire medical chart and there has never been a visit related to any allergic reaction." J.A. 725. Saying that there is no history of a condition is a far cry from "clearly stating" that no such condition existed. Fairly read, the doctor's letter is entirely consistent with the other evidence of record establishing that the decedent suffered from an allergy to bee stings that pre-existed the fatal sting.

The record in this case compels the conclusion that the decedent's bee-sting allergy is properly viewed as a "pre-existing disease, pre-disposition, or susceptibility to injury." Quesinberry, 987 F.2d at 1028. The independent consulting physician's report and the website submitted by Hall in support of her appeal support such a finding. Further, as the district court

15

noted, the National Institute of Allergy and Infectious Disease supports the view that an allergy is a disease or impairment. Hall, 398 F. Supp. 2d at 500 n.2. Hall did not argue, nor need we decide, whether an "allergy" is a "disease or impairment" for all purposes, in every case; our decision is grounded in the record before us.

We now turn to the second Quesinberry prong and the question of causation. For the one or two people out of every thousand afflicted with the decedent's condition, a bee sting has the potential to cause a severe anaphylactic reaction. That is precisely what happened here. The death certificate and independent physician's report document the fact that the decedent's allergy triggered the anaphylaxis that was the immediate cause of his death. Consequently, on the second prong of Quesinberry, we are constrained to conclude that the decedent's bee-sting allergy was a pre-existing condition that substantially contributed to his death, and the Plan unambiguously excludes coverage on that basis.

We are not unsympathetic to the concern voiced by Hall that an expansive reading of the exclusionary language in the Plan in this case might negate coverage in spite of the legitimate expectations of insured individuals and beneficiaries. See Silverstein v. Metro. Life Ins. Co., 171 N.E. 914, 915 (N.Y. 1930) ("A policy of insurance is not accepted with the thought that its coverage is to

16

be restricted to an Apollo or a Hercules."). However, we are satisfied that our analysis, dictated by precedent, of whether a "pre-existing disease, pre-disposition, or susceptibility to injury . . . substantially contributed to the disability or loss" serves as an adequate check on insurers' decisions in accidental loss cases. Quesinberry, 987 F.2d at 1028 (emphasis added).

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

17